UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| TIMOTHY DEWAYNE BARNETT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-1284-HE |
| | ) | |
| JOHN MICAH SIELERT et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Timothy DeWayne Barnett, an Oklahoma inmate appearing pro se and proceeding *in forma pauperis*, has filed suit under 42 U.S.C. § 1983, alleging that several state employees violated rights guaranteed to him by the United States Constitution. *See* Compl. (Doc. No. 1) at 1-9; Mot. to Amend Compl. (Doc. No. 9) at 1-2; *see also* Order on Mot. to Amend Compl. (Doc. No. 14) at 1-2.[1] Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). Having screened Plaintiff's amended pleading, the undersigned recommends that it be dismissed in its entirety under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

STANDARD OF REVIEW

The Court is obligated to review Plaintiff's amended pleading in order to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that is frivolous,

---

[1] Citations to documents filed with the Court use the page and attachment numbers assigned by CM/ECF. When quoting from the amended pleading, the undersigned has occasionally altered capitalization and punctuation to improve readability.

1

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). A claim is facially plausible when the well-pled factual allegations, accepted as true and viewed in the plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678, 679; *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).

A pro se plaintiff's complaint is "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," so that any potentially valid claim can be fairly decided on its merits. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must allege "facts on which a recognized legal claim could be based," *id.*, and district courts should not "construct . . . claims or grounds [for] relief" not fairly presented in the complaint, *Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 970 (10th Cir. 2001).

SUMMARY OF PLEADING AND PUBLIC RECORD

Plaintiff's allegations stem from six Defendants' involvement in the investigation, prosecution, and adjudication of four separate criminal cases against Plaintiff in Washita County, Oklahoma, in 2013 and 2014: Case Numbers CF-2013-96, CF-2014-8, CF-2014-

10, and CF-2014-28.[2]  *See generally* Compl. at 1-5, 8-9; Mot. to Amend Compl. at 1-2. Those Defendants are: Dennis Smith, the then-district attorney; John Micah Sielert, Plaintiff's first court-appointed attorney; Christopher Kelly, the presiding Associate District Judge; and Kenny Loftiss, Jason Maxey, and Kelby Peoples, the Washita County Sheriff's deputies who arrested Plaintiff and searched his vehicle. *See generally* Compl. at 1-5, 8-9; Mot. to Amend Compl. at 1-2.  Plaintiff seeks money damages from "all Defendants in their personal capacit[ies]." Compl. at 6.

On October 4, 2013, Deputies Loftiss and Maxey "initiated a traffic stop to serve [a] felony arrest warrant on [Plaintiff in] case n[umber] CF-2013-96." *Id.* at 2.  Deputy Loftiss arrested Plaintiff while Deputy Maxey recovered a suspicious substance, drug paraphernalia, and $1245 cash from Plaintiff's pickup truck. *See id.* at 2, 8; Pet. Ex. 4 (Doc. No. 1-4) at 2.  That same day, Plaintiff was charged and arrested in the first case at issue (CF-2013-96) with one count of distributing a controlled dangerous substance. *See* Compl. at 2; *Barnett*, No. CF-13-96 (docket entries of Oct. 4 and 7, 2013).  Plaintiff appeared before Judge Kelly, who ordered Plaintiff released subject to a $30,000 appearance bond. *See* Compl. at 2; *Barnett*, No. CF-13-96 (docket entry of Oct. 9, 2013).

---

[2] The undersigned takes judicial notice of the state-court dockets in *State v. Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (Washita Cnty. Dist. Ct.), which are available via http://www.oscn.net.dockets.  The undersigned also takes judicial notice of Washita County District Court records that Plaintiff discusses in his § 1983 complaint and attached to a prior petition for habeas corpus under 28 U.S.C. § 2241. *See Barnett v. Reeve*, No. CIV-14-1200-M (W.D. Okla.) (Doc. Nos. 1-1 to 1-6), *dismissed without prejudice*, 2015 WL 348781 (W.D. Okla. Jan. 26, 2015); *Merswin v. Williams Cos.*, 364 F. App'x 438, 441 (10th Cir. 2010); *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  For ease of reference, the latter documents are referred to by the exhibit number applicable to the § 2241 petition (e.g., "Pet. Ex. __").

3

On January 9, 2014, Deputy Peoples stopped the vehicle Plaintiff was driving. Compl. at 2; Pet. Ex. 3 (Doc. No. 1-3) at 1-2; *Barnett*, No. CF-14-10 (docket entries of Jan. 10 and 13, 2014). Plaintiff was arrested without a warrant for various traffic and public-safety offenses. Compl. at 2; Pet. Ex. 3, at 1-2; *Barnett*, No. CF-14-10 (docket entries of Jan. 10 and 14, 2014). The next day, an Information charging Plaintiff with traffic and public-safety offenses was filed in Case Number CF-2014-10, along with Deputy Peoples' "Probable Cause Affidavit for Arrest Without Warrant." *Barnett*, No. CF-14-10 (docket entries of Jan. 10 and 14, 2014); Pet. Ex. 3, at 1-2. The affidavit for warrantless arrest was approved by Judge Kelly. Pet. Ex. 3, at 3-4.

On January 10, 2014, an Information charging Plaintiff with having committed certain drug offenses in October 2013 was filed in Case Number CF-14-8. *Barnett*, No. CF-14-8 (docket entries of Jan. 10 and 13, 2014). Also filed in Case Number CF-2014-8 was an arrest warrant for Plaintiff that had been signed by Judge Kelly in December 2013. Pet. Ex. 4, at 3; *Barnett*, No. CF-14-8 (docket entries of Jan. 10 and 13, 2014). On January 14, 2014, Plaintiff appeared before Judge Kelly on both cases, who ordered Plaintiff released subject to a $20,000 appearance bond in Case Number CF-2014-8 and a $30,000 appearance bond in Case Number CF-2014-10. *See* Compl. at 4; *Barnett*, Nos. CF-14-8, CF-14-10 (docket entries of Jan. 14 and 15, 2014).

On February 23, 2014, Deputy Maxey stopped Plaintiff for a traffic offense and searched his vehicle and him. *See* Compl. at 8; Pet. Ex. 1 (Doc. No. 1-1) at 1-2. Plaintiff was arrested and, two days later, charged in the fourth case at issue (CF-2014-28) with various traffic, drug, and property offenses. *See* Compl. at 8; Pet. Ex. 2 (Doc. No. 1-2) at

4

1-2. A Supplemental Information also was filed, informing Plaintiff that due to a prior conviction he would be subject to an enhanced penalty if convicted of the drug charge in Case Number CF-2014-28. *See* Pet. Ex. 2, at 1, 3 (citing *State v. Barnett*, No. CF-99-69 (Washita Cnty. Dist. Ct.)); Compl. at 3, 8. Plaintiff again appeared before Judge Kelly, who set bail at $300,000 and revoked Plaintiff's bonds in Case Numbers CF-2014-8 and CF-2014-10. Compl. at 4, 9; *see also* Pet. Ex. 1, at 3; *Barnett*, Nos. CF-14-28, CF-14-8, CF-14-10.

In April 2014, Judge Kelly appointed John Micah Sielert, an attorney with the Oklahoma Indigent Defense System ("OIDS"), to represent Plaintiff in all four cases. *See* Compl. at 9; *Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (docket entries of Apr. 29, 2014). Eight months into their attorney-client relationship, "Plaintiff rec[ei]ved intel of [Mr. Sielert's] infidelities representing co-defendants." Compl. at 4. Plaintiff "demanded [that Mr. Sielert] step down off all [Plaintiff's] cases, which he did," on November 6, 2014. *Id.* at 4, 9; *see also Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (docket entries of Nov. 6 and 17, 2014). Attorney Ryan Recker then undertook representation of Plaintiff. *See* Mot. to Amend Compl. at 1; *Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (docket entries of Nov. 17, 2014). Plaintiff pled guilty to certain charges against him in all four cases and was sentenced to serve a term or terms of incarceration in each. *See Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (docket entries of Jan. 16, 2015).

As noted, Plaintiff contends that the conduct of Defense Attorney Sielert, District Attorney Smith, Judge Kelly, and Deputies Loftiss, Maxey, and Peoples in connection

5

with the events described above violated Plaintiff's constitutional rights. *See* Compl. at 1-5, 8-9; Mot. to Amend Compl. at 1-2. Plaintiff's specific claims are summarized and discussed below.

ANALYSIS

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Determining whether Plaintiff's well-pled factual allegations clear this threshold is "a context-specific task," *Iqbal*, 556 U.S. at 679, that depends on both the specific constitutional violation alleged, *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), and the capacity in which each Defendant is sued, *Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985). *See Iqbal*, 556 U.S. at 677-78. Plaintiff consistently uses phrases such as "illegal representation," "excessive bail," "illegal prosecution," and "unlawful arrest [and] unlawful search" to describe the constitutional wrongs for which he seeks to hold Defendants personally liable under § 1983. *See* Compl. at 1-6, 8-9; Mot. to Amend Compl. at 1-2. These labels and conclusions, while "not entitled to the assumption of truth," provide a framework for identifying Plaintiff's cognizable claims and determining whether any portion of his amended pleading can survive summary dismissal. *Iqbal*, 556 U.S. at 679.

A. *Defense Attorney Sielert*

Plaintiff asserts that Mr. Sielert committed malpractice and violated Plaintiff's federal constitutional rights while representing him in the underlying criminal cases. *See*

6

Compl. at 4, 9; Mot. to Amend Compl. at 1-3. Specifically, Plaintiff asserts that Mr. Sielert: (1) misled Plaintiff into waiving his right to a preliminary hearing; (2) failed to inform Plaintiff that he also represented Bobbie Lee Barnett and Tara Beth Miller, Plaintiff's codefendants in certain state-court cases;[3] (3) failed to give Plaintiff the State's evidence against him; and (4) "refused to call witnesses [or] file motion[s] on Plaintiff's behalf." *See* Compl. at 1, 4, 9; Mot. to Amend Compl. at 1-2. Insofar as his § 1983 claim, Plaintiff seeks damages against Mr. Sielert for violating his constitutional rights to counsel and to a "fair and speedy trial" in the underlying state-court prosecutions. *See* Compl. at 2, 4, 9; Mot. to Amend Compl. at 1-2.

The U.S. Supreme Court has long held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). The sole exception to this rule is where the public defender conspired with state officials to deprive the defendant of his or her constitutional rights. *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (citing *Tower v. Glover*, 467 U.S. 914, 920 (1984)). But "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by

---

[3] Ms. Miller was in the car with Plaintiff when he was arrested on October 4, 2013, and again on January 9, 2014. *See* Pet. Ex. 3, at 2; Pet. Ex. 4, at 1-2; Pet. Ex. 5, at 1. Plaintiff asserts that Ms. Miller "to[ok] full responsibility" for the controlled substance that Deputy Maxey recovered from Plaintiff's vehicle on October 4, 2013. *See* Compl. at 2, 8. Mr. Sielert appeared in court on Ms. Miller's behalf during one pretrial hearing in CF-13-95 and CF-14-9. *See State v. Miller*, Nos. CF-13-95, CF-14-9 (Washita Cnty. Dist. Ct.) (docket entries of Mar. 25, 2014). Ms. Barnett was in the car with Plaintiff when he was arrested on February 23, 2014. *See* Pet. Ex. 1, at 2. Mr. Sielert appeared in court on Ms. Barnett's behalf during a restitution hearing on July 29, 2014, after she pled no contest to one count of conspiracy. *See State v. Barnett*, No. CF-14-43 (Washita Cnty. Dist. Ct. (docket entry of July 29, 2014).

7

implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983); *see Hunt*, 17 F.3d at 1268 (applying this standard to plaintiff's § 1983 claim against his state public defender based upon allegations of "actions relating to the adequacy of counsel at trial").

Advising one's client, filing pretrial motions, and contacting potential witnesses are all "traditional functions" that an attorney performs as counsel to a defendant in a criminal prosecution.[4] *See Dodson*, 545 U.S. at 318-19, 319 n.8 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979)). Plaintiff does not plausibly suggest—let alone allege "specific facts demonstrating agreement and concerted action"—that Mr. Sielert conspired with a state official to deprive Plaintiff of any constitutionally protected right in these cases. *McNally v. Colo. Pub. Defender*, 15 F. App'x 645, 647 (10th Cir. 2001). Accordingly, Plaintiff's claims against Mr. Sielert should be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See Jackson v. Brummett*, 311 F. App'x 114, 115-16 (10th Cir. 2009) (affirming district court's dismissal with prejudice of pro se plaintiff's § 1983 claims against his state public defender where leave to amend would be futile).

---

[4] Plaintiff's allegation that Mr. Sielert failed to inform Plaintiff about a potential conflict of interest does not mean that Mr. Sielert was acting outside his "traditional" role as a criminal-defense attorney—i.e., to advance Plaintiff's interests against the State through adversarial litigation. *See Dodson*, 454 U.S. at 319 & n.8.

*B. Judge Kelly*

Plaintiff alleges that Judge Kelly ordered excessive bail and should not have presided over Plaintiff's cases because, nearly a decade earlier when Judge Kelly was a prosecutor, he had prosecuted Plaintiff for similar drug charges. *See* Compl. at 2-4, 9. A judge acting in the manner alleged, however, is absolutely immune from § 1983 suits for damages. *See Glaser v. City & Cnty. of Denver*, 557 F. App'x 689, 703-06 & n.5 (10th Cir. 2014) (holding that plaintiff's § 1983 damages claims against state-court judge, and against district attorney for actions taken in his role as a prosecutor, should be dismissed with prejudice). Therefore, Judge Kelly should be dismissed from the action with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

"[J]udges are generally immune from suits for money damages." *Stein v. Disciplinary Bd. of Supreme Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008) (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)). "There are only two exceptions to this rule: (1) when the act is 'not taken in [the judge's] judicial capacity,' and (2) when the act, 'though judicial in nature, [is] taken in the complete absence of all jurisdiction." *Id.* (alterations in original) (quoting *Mireles*, 502 U.S. at 12). "The 'judicial acts' for which judges enjoy immunity include all functions normally performed by a judge when the parties deal with the judge in [his] judicial capacity." *Bradley v. Gray*, 78 F. App'x 84, 85 (10th Cir. 2003) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Assuming that requirement is met, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he

will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (internal quotation marks omitted).

The acts of Judge Kelly about which Plaintiff complains all occurred in the course of the initial criminal proceedings against Plaintiff in the four cited criminal cases, specifically Judge Kelly's decisions to issue arrest warrants and to set or revoke bail in each case. *See* Compl. at 2, 4, 9. Judge Kelly certainly "was acting in his judicial capacity, and within his judicial jurisdiction, when he signed Plaintiff's arrest warrant and set his bail." *Tucker v. Loftiss*, No. CIV-14-1053-R, 2014 WL 7158282, at *2 (W.D. Okla. Dec. 15, 2014) (citing *Hicks v. Blythe*, No. 96-7034, 1997 WL 8844, at *1 (10th Cir. Jan. 9, 1997)). Judge Kelly was also acting within his judicial capacity and within his jurisdiction when he presided over the preliminary proceedings in Plaintiff's criminal cases despite having prosecuted Plaintiff for similar charges prior to taking the bench. *See* Compl. at 2, 9 ("[Judge] Kelly also viewed over all my cases through preliminary proceedings, Plaintiff never had [an] impartial judge."); Okla. Stat. tit. 20, § 1401 (disqualification of trial judge); *Christensen v. Ward*, 916 F.2d 1462, 1473-74 (10th Cir. 1990) ("[J]udges are absolutely immune from suit on any claim based on the conduct of their office, including allegations that a decision is erroneous, malicious, or in excess of their judicial authority."). "Plaintiff's suspicions that Judge [Kelly] was biased against him" do not change this result, as "[i]mmunity for judicial acts cannot 'be affected by the motives with which [they] are performed.'" *Bradley*, 78 F. App'x at 85-86 (third alteration in original) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).

Accordingly, Plaintiff's claims against Judge Kelly should be dismissed with prejudice. *See Glaser*, 557 F. App'x at 706.

C.   *District Attorney Smith*

Plaintiff alleges that the decisions of Mr. Smith to charge Plaintiff with certain crimes, and to seek enhancement of the potential sentencing range on the basis of a prior drug conviction, were "illegal." Compl. at 3. Again, a state prosecutor acting in the manner alleged is absolutely immune from § 1983 suits for damages; therefore, District Attorney Smith should be dismissed from this action with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

"State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities 'intimately associated with the judicial process.'" *Douglas v. Miller*, 864 F. Supp. 2d 1205, 1214 (W.D. Okla. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). While immunity ultimately depends on the nature of the challenged conduct, it is beyond dispute that prosecutors are absolutely immune from § 1983 suits for damages challenging their decisions to initiate or pursue criminal prosecutions. *Imbler*, 424 U.S. at 416, 430-31. Accordingly, Plaintiff's claims against Mr. Smith for making a "frivolous" charging decision and "illegally prosecuting" Plaintiff in the underlying state-court cases should be dismissed with prejudice. *See Glaser*, 557 F. App'x at 705-06.

D.   *Defendants Loftiss, Peoples, and Maxey*

Finally, Plaintiff alleges that Defendants Loftiss, Peoples, and Maxey each violated Plaintiff's Fourth Amendment right against unreasonable searches and seizures

11

by arresting him without a warrant and searching his vehicle without his consent.[5] *See* Compl. at 2-3, 5, 8-9. First, Plaintiff alleges that when Deputies Loftiss and Maxey stopped and arrested Plaintiff on October 4, 2013, the arrest warrant cited by the Deputies was a "ghost" because no actual warrant was issued until the next day. Compl. at 2.[6] Second, Plaintiff alleges that when Deputy Peoples stopped and arrested Plaintiff on January 9, 2014, the arrest warrant cited by the Deputy again was not issued until the next day. *Id.*[7] Third, Plaintiff alleges that Deputy Maxey's search of Petitioner's vehicle on February 23, 2014, was "illegal." Compl. at 8; *see also* Pet. Ex. 1, at 1-2. Plaintiff asserts that the "illegal" evidence uncovered during those "unlawful" encounters— evidence which Plaintiff describes as "bad fruit from bad tree[s]"—allowed the Washita County District Attorney's Office to file charges against him in each of the underlying state-court cases. Compl. at 2, 8. Plaintiff pled guilty to most of those charges shortly after he filed this § 1983 action. *See Barnett*, Nos. CF-13-96, CF-14-8, CF-14-10, CF-14-28 (docket entries of Jan. 16, 2015).

---

[5] Plaintiff also asserts that the officers questioned him before giving him *Miranda* warnings. Compl. at 2, 8. However, an officer's failure to read *Miranda* warnings does "not violate [a suspect's] constitutional rights and cannot be grounds for a § 1983 action" against the officer. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

[6] State-court records show that the referenced warrant was signed by Judge Kelly on October 3, 2013, but not filed until it was executed on October 4, 2013. *Barnett*, Nos. CF-13-96 (docket entries of October 4, 2013); Pet. Ex. 5 (Doc. No. 1-5) at 1-3.

[7] State-court records show that this was a warrantless arrest, subsequently approved by Judge Kelly on January 10, 2014. *Barnett*, No. CF-14-10 (docket entries of Jan. 10 and 14, 2014); Pet. Ex. 3, at 1-2, 4. *See also* Okla. Stat. tit. 22, § 196 (authorizing warrantless arrest for public offenses committed in officer's presence).

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). But if a successful § 1983 action "would not *necessarily* imply that the plaintiff's conviction was unlawful," then "the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 & n.7.[8]

"*Heck* acknowledges that some Fourth Amendment violations 'even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.' In such cases, 'the action should be allowed to proceed' to the extent that the § 1983 plaintiff can prove not only that the search [or seizure] was unlawful, but that it caused him actual, compensable injury" apart from "'the 'injury' of being convicted and imprisoned.'" *Harper v. Ashcroft*, 113 F. App'x 324, 326-27 (10th Cir. 2004) (quoting *Heck*, 512 U.S. at 487 & n.7). Here, even assuming that Plaintiff's search-and-seizure related allegations against the deputy defendants, if proven, would not necessarily impugn the validity of

---

[8] When, as here, a plaintiff files a § 1983 claim before he has been convicted of the subject criminal charges, the action though initially proper may be stayed pending disposition of the charges. *See Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Wallace*, 549 U.S. at 394. *Cf. Raper v. Boggs*, No. 07-cv-499, 2007 WL 3128405, at *1-2 (N.D. Okla. Oct. 24, 2007) (dismissing plaintiff's stayed § 1983 action under *Heck* after receiving notice that plaintiff had been convicted of state-court charges and finding that a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction or sentence).

Plaintiff's subsequent guilty pleas and resulting convictions, Plaintiff's pleadings do not contain any facts suggesting that these defendants' conduct caused Plaintiff to suffer any "actual, compensable injury," *Heck*, 512 U.S. at 487 n.7, "beyond an injury inherent in conviction and imprisonment" for the underlying offenses, *Harper*, 113 F. App'x at 327. *See also Baldwin v. O'Connor*, 466 F. App'x 717, 717-18 (10th Cir. 2012).

Absent such facts, and because Plaintiff has not pled or shown that the underlying convictions and sentences have "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254," Plaintiff's claims against Defendants Loftiss, Peoples, and Maxey should be dismissed without prejudice. *Heck*, 512 U.S. at 486-87; *see Bryner v. Utah*, 429 F. App'x 739, 744 (10th Cir. 2011) (citing *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996)).

RECOMMENDATION

The undersigned recommends that Plaintiff's amended pleading (Doc. Nos. 1, 9) be dismissed in its entirety under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Plaintiff's claims against Defense Attorney John Micah Sielert, Judge Christopher Kelly, and District Attorney Dennis Smith should be dismissed with prejudice; his claims against Kenny Loftiss, Kelby Peoples, and Jason Maxey should be dismissed without prejudice.

NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by June 21, 2016, in accordance with 28

U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 31st day of May, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE